IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KIM S. MARINE                                                                                            PLAINTIFF

V.                                            NO. 13-3025

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kim S. Marine, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplement security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her current applications for DIB and SSI on March 17, 2010 and March 26, 2010, respectively, alleging an inability to work since May 1, 2007, due to post traumatic stress syndrome, severe depression, anxiety, panic attacks, bipolar disorder, and ADHD (attention

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

deficit hyperactivity disorder). (Tr. 119-120, 126-130, 166, 199). An administrative hearing was held on April 6, 2011, at which Plaintiff appeared with counsel, and she and her husband testified. (Tr. 26-57).

By written decision dated July 12, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - prescription drug addiction and substance abuse induced-depression. (Tr. 15). The ALJ also found that Plaintiff's impairments, including the substance use disorder, met sections 12.04 and 12.09 of the Listings. (Tr. 15). The ALJ found that if Plaintiff stopped the substance use, the remaining limitations would not cause more than a minimal impact on the Plaintiff's ability to perform basic work activities. Therefore, Plaintiff would not have a severe impairment or combination of impairments. (Tr. 18). Finally, the ALJ found that because Plaintiff would not be disabled if she stopped the substance use, Plaintiff's substance use disorder was a contributing factor material to the determination of disability. Thus, he found Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 18, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff raises the following arguments on appeal: 1) Whether the ALJ committed reversible error when he found Plaintiff would not be disabled if she was not on pain medication when Plaintiff had a long history of other impairments the ALJ did not find severe; and 2) Whether the ALJ erred in discounting the treating physician's diagnoses and treatment over that of a one time examining psychologist and a 6 year old MRI. (Doc. 11).

### A.    ALJ's Finding that Plaintiff Would Not Be Disabled if she was not on Pain Medication:

Plaintiff basically contends that the ALJ improperly discounted her mental and physical limitations in determining she would have no remaining severe impairments if her prescription drug abuse ceased.

An individual is not entitled to benefits if alcoholism or drug addiction would be a

contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J). The process for the ALJ to follow when there is medical evidence of drug addiction or alcoholism is set forth in 20 C.F.R. § 416.935(b):

> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism. (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Plaintiff has the burden to prove that alcoholism or drug addiction is not a contributing factor. Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). "'If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow.'" Id. (quoting Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).

The record in this case is replete with instances of Plaintiff's prescription drug abuse and drug-seeking behavior. A brief summary of Plaintiff's relevant treatment records is necessary in order to provide a basis for this conclusion.

In a January 15, 2007 report by Dr. Tammy Tucker, one of Plaintiff's previous treating physicians, Dr. Tucker noted that Plaintiff told her that Dr. Tucker had increased her medications the prior week to "two 40 mg oxy three times a day," but Dr. Tucker had no record of the increase. (Tr. 256). Dr. Tucker was going to call the pharmacies and confirm this was the case, or discharge her as a patient. (Tr. 256). In a record dated January 23, 2007, Dr. Tucker reported that Plaintiff was having withdrawals from the pain medications, and Dr. Tucker assessed her with narcotic withdrawal from misusing medication as directed. She recommended Plaintiff consider narcotic rehabilitation. (Tr. 254). By May of 2007, Dr. Tucker informed Plaintiff that she would not be prescribing any narcotics to her but would see her for any illness she might have in the future. (Tr. 245). On May 18, 2007, Plaintiff told Dr. Tucker that she had been released from her pain management doctor for lying. (Tr. 244).

A May 20, 2007 report from North Arkansas Regional Medical Center reveals that Plaintiff presented herself to the hospital complaining of back pain, and said she ran out of medications the previous day and was fired from her doctor. (Tr. 289). It is noteworthy that the only MRI of Plaintiff's lumbar spine is dated January 17, 2005, which revealed "very small central disk herniations" identified at L4-L5 and L5-S1. (Tr. 515). The hospital visit in 2007 recorded that there was no lower extremity weakness or sensory findings, she had normal muscle strength and tone, and her reflexes were equal and symmetrical. (Tr. 290). With respect to musculoskeletal findings, the hospital reported that there was no local bony tenderness, no paravertebral spasm, there was adequate range of motion, and no significant deformity of her lower back. (Tr. 290). Plaintiff could walk without assistance but with some difficulty, and she reported that she had previously been treated by Dr. Hawk, but she violated her pain contract and

had been fired. (Tr. 291). The hospital provided Plaintiff with a temporary amount of pain medication until she could see a new doctor, Dr. Craig Milam. (Tr. 291). She was diagnosed with chronic pain syndrome. (Tr. 291).

On May 23, 2007, Plaintiff saw Dr. Milam, who reported that the last time she was at his clinic was in October of 2003, when she saw Dr. Horton and was then fired because of misuse of pain medications. (Tr. 340). Dr. Milam reported that since that time, she had seen Dr. Hawk, who fired her for abuse of pain medications, and was subsequently fired by Dr. Tucker. (Tr. 340). Dr. Milam also noted that Plaintiff smoked one pack of cigarettes per day. (Tr. 341). Plaintiff also signed a pain contract with Dr. Milam. (Tr. 344). Dr. Milam also assessed Plaintiff with chronic pain syndrome and degenerative disk disease of the lumbar spine. (Tr. 346).

On February 2, 2008, Plaintiff presented herself to Baxter Regional Medical Center emergency room, complaining of back pain and reported that she had been out of Oxycontin for two days. She was diagnosed with opiate withdrawal. (Tr. 305). The doctor gave her 3 pills of Oxycontin to get her through the next 36 hours until she was able to talk to her family doctor. (Tr. 307). The next record is dated February 18, 2008, when Plaintiff again presented herself to North Arkansas Regional Medical Center, complaining of back pain. (Tr. 286). She indicated she had been out of medications for one day and had no primary care physician. (Tr. 286). She was reported as having no trouble walking, she denied radicular numbness or tingling, had no history of radiating pain, no lower extremity weakness, and was unaffected by movement or position. (Tr. 286). She had normal muscle strength and tone and her reflexes were equal and symmetrical. She had adequate range of motion. (Tr. 287). The doctor reported that Plaintiff told him she had been seeing Dr. Hawk, and when the doctor told her that he had spoken to Dr. Hawk, she stated

she had also been seeing Dr. Tucker, and now had an appointment with another doctor. (Tr, 287). The doctor told Plaintiff he would give her a pain shot that night, but no prescriptions. (Tr. 287). The diagnosis was chronic pain syndrome. (Tr. 287).

On April 11, 2008, Plaintiff presented herself to North Arkansas Regional Medical Center emergency room, complaining of back pain/injury. (Tr. 280). Plaintiff reported she was fired by Dr. Hawk because she came to the emergency room for pain medications, and stated that she had been out of Vicodin and Oxycodine for 8 months. (Tr. 281).

On May 5, 2009, Plaintiff saw Dr. Milam, who noted that Plaintiff had not worked as an LPN for a long time, and that she wanted to be off a lot of her medications, and Dr. Milam agreed with her. (Tr. 368). Dr. Milam gave Plaintiff samples of Cymbalta for her depression and pain and prescribed physical therapy in Harrison with the aqua therapy. (Tr. 369). On May 26, 2009, Plaintiff saw Dr. Milam and reported that she had not started her physical therapy, but she wanted to increase her dose of Alprazolam and needed some breakthrough medicine. (Tr. 376). On June 23, 2009, Dr. Milam noted that Plaintiff was having some trouble adjusting to cutting back on her pain medications. (Tr. 383). On August 8, 2009, Plaintiff reported to Dr. Milam that she tried to get off some of her medicine or cut back on it, but was continuing to have rather severe pain. (Tr. 401). On September 8, 2009, when Plaintiff saw Dr. Milam, he noted that Plaintiff was supposed to get an MRI of her back in Harrison and see Dr. Ceola or Dr. Crabtree, but her financial situation precluded that. (Tr. 408).

On September 29, 2009, Plaintiff presented to Baxter Regional Medical Center, reporting that she previously had been taking oxycodone and morphine orally and then a week prior, she transitioned to methadone in hopes of trying to come off the narcotics on her own. (Tr. 299). It

was reported that Plaintiff smoked a pack and a half to two packs of cigarettes daily. (Tr. 300). Plaintiff was assessed with impending narcotic withdrawal and the hospital initiated New Vision protocol. (Tr. 300). On September 30, 2009, it was reported that Plaintiff was placed on New Vision Protocol, which seemed to manage her symptoms, but ultimately she apparently left against medical advice. (Tr. 298). Plaintiff had vacated her room and they were unable to locate her. (Tr. 298).

Plaintiff reported to Dr. Milam on October 8, 2009, that she wanted to change to a patch, because it was "too easy to take extra OxyContin." (Tr. 417). On November 19, 2009, Dr. Milam again noted that Plaintiff was having trouble cutting back on her narcotics. (Tr. 432). On January 13, 2010, Dr. Milam reported that Plaintiff lost her LPN license, and that she looked bad. (Tr. 440-441). On February 17, 2010, Dr. Milam reported that Plaintiff indicated that methadone was working better that anything she had tried before. (Tr. 448).

On March 15, 2010, Kathy Bauer, L.P.C., diagnosed Plaintiff with major depressive disorder, severe, recurrent, and addiction to prescription medications. (Tr. 466). She recommended inpatient hospitalization and extended outpatient counseling. (Tr. 466).

On May 18, 2010, non-examining consultant, Dr. Jim Takach, completed a Physical RFC Assessment and found that there was no evidence of significant cervical disease and that from the medical records available, Plaintiff could perform light work with certain limitations. (Tr. 473).

On June 14, 2010, W. Charles Nichols, Psy.D., conducted a Mental Diagnostic Evaluation. (Tr. 480-485). Dr. Nichols found that Plaintiff's presentation seemed "very dramatic and superficial." (Tr. 483). He had suspicion about exaggeration of complaints due to a number

of Plaintiff's reports. (Tr. 484). He therefor administered a SIMS test, and indicated that her total score of 31 was more than twice the empirically derived cutoff and indicates she reported unusually severe and atypical symptoms patterns compared to bona fide patients. (Tr. 484). He found similar scores raised significant suspicion of malingering, according to the test publisher. (Tr. 484). Dr. Nichols found that given those findings, which indicated a strong suspicion of malingering in the form of symptoms exaggeration, affective and mood disorders could not be diagnosed at that time without valid symptoms information. He offered a provisional diagnoses of malingering and opioid dependence, and noted that PTSD and depression could not be ruled out or confirmed due to validity concerns. (Tr. 484). He also concluded that her activities of daily living functioning was unable to be determined, based on doubts about validity of self-report data. (Tr. 485).

On November 30, 2010, Dr. Milam examined Plaintiff and found that her color was good, and her affect was much better, but concluded that Plaintiff was totally disabled. He further stated:

> She has tried to work at different places several times since I have been seeing her as a patient, since 5/23/07. When she works for a short time, weeks or at most 1 month, her back hurts all the time and she has to quit. She has long, time, significant DDD of low back and neck, requiring full time narcotics and muscle relaxer, soma.

(Tr. 508). Dr. Milam also completed an April 2, 2011 Medical Assessment of Ability to Do Work-Related Activities (Physical), severely limiting Plaintiff's abilities. (Tr. 518-520).

With respect to Plaintiff's alleged physical limitations, Plaintiff alleges that her back pain limits her ability to function. As indicated earlier, the only MRI of Plaintiff's lumbar spine in the transcript is the one dated January 17, 2005, which reveals "very small central disk herniations"

AO72A
(Rev. 8/82)

at L4-L5 and L5-S1. (Tr. 515).  It is noteworthy that Dr. Jim Takach, in his Physical RFC Assessment dated May 18, 2010, found there was no evidence of significant cervical disease, and that the records were consistent with the ability to perform light work, except that Plaintiff could occasionally climb ramp/stairs, ladder/rope/scaffolds; balance; stoop; kneel; crouch; and crawl. (Tr. 473).  Although it was recommended that Plaintiff obtain another MRI, Plaintiff did not do so, alleging that she could not afford it. However, Plaintiff continued to smoke one to two packs of cigarettes per day,  and the Court therefore cannot say that her financial situation prevented her from receiving medical treatment. Failure of the Plaintiff to seek medical treatment strongly weighs against her subjective claims of pain and limitation and has been held to be inconsistent with allegations of pain.  See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003); Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995 (per curiam).  In addition, in Plaintiff's Pain Questionnaire dated April 21, 2010, Plaintiff reported that her mental illness "seems to affect me worse than the pain physically or at least it managed better." (Tr. 197). Finally, as noted by Defendant, Plaintiff apparently had no problem paying for frequent medical visits from hospitals and treating physicians, and had no problem buying a continuous supply of pain medications.

With respect to Plaintiff's alleged mental limitations, the evidence reveals that Plaintiff was a licensed practical nurse for several years, and lost her license.  In his decision, the ALJ analyzed Plaintiff's mental limitations in the event Plaintiff stopped the substance use, in accordance with 20 C.F.R. 404.1529 and 416.929. (Tr. 19). He considered the four broad functional areas set out in the disability regulations for evaluating mental disorders, known as the "paragraph B" criteria. (Tr. 20). He found that in the area of activities of daily living, Plaintiff

would have mild limitation. (Tr. 20). He noted that it was reasonable to assume that prior to becoming addicted to prescription drugs, Plaintiff was able to work as an LPN, care for herself, her family and a home, and drive herself to work and shop. (Tr. 20). He found that in the area of social functioning, Plaintiff would have mild limitation. (Tr. 20). Although Plaintiff and her husband testified that she spent 23 hours a day lying in bed and smoking cigarettes, her husband noted that she had not always been like that. (Tr. 20). The ALJ found that in the area of concentration, persistence or pace, Plaintiff would have mild limitation, noting that although Plaintiff dropped out of school, she managed to earn a GED and LPN license. (Tr. 21). The ALJ finally found that if the substance use was stopped, Plaintiff would experience no episodes of decompensation. (Tr. 21).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's prescription drug abuse was a contributing factor material to the disability determination, and that if Plaintiff stopped her substance abuse, she would not be disabled.

**B.      Weight Given Plaintiff's Treating Physician:**

Plaintiff has been treated by Dr. Milam since 2007, and he continued to prescribe pain medications for Plaintiff. Although he directed Plaintiff to obtain an MRI, and to pursue physical therapy through aquatic therapy, Plaintiff failed to do so. In addition, Dr. Milam always agreed with Plaintiff when she indicated she wanted to cut back on her pain medications. "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003),

paraphrasing 20 C.F.R. § 404.1527(d)(2). When a treating source's opinion is not controlling, it is weighed by the same factors as any other medical opinion: the examining relationship, the treatment relationship, supporting explanations, consistency, specialization, and other factors. See 20 C.F.R. § 404.1527(d); Lehnartz v. Barnhart, 142 Fed. Appx. 939, 940, 2005 WL 1767944 at *1 (8th Cir. Minn. 2005). A treating physician's opinion that a claimant is disabled and cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

The ALJ reported that he considered statements from treating and examining physicians in assessing Plaintiff's residual functional capacity, and specifically referenced Dr. Milam's April 2, 2011 Medical Source Statement, in which he assigned Plaintiff severe limitations secondary to her physical complaints. However, the ALJ concluded that he was not able to give Dr. Milam's opinion significant weight "considering the findings of Dr. Nichols and the lack of objective medical evidence to support the claimant's unrelenting complaints of pain." (Tr. 18). As there is no other medical evidence showing that Plaintiff's back impairment deteriorated after 2005, Plaintiff has failed to meet her burden of proving the existence of a severe impairment.

Based upon the foregoing, the Court finds there is substantial evidence to support the weight the ALJ gave to Dr. Milam's opinion.

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby,

dismissed with prejudice.

IT IS SO ORDERED this 25th day of March, 2014.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE